So, second case of the day, 4-14-0141, CNB Bank & Trust v. Francis Rosentreter et al. Attorney Grumad is here on behalf of the appellant. Attorney Huebner is here on behalf of the appellee. Mr. Grumad, are you ready to proceed? Yes. Okay, you may do so. Your Honor, is the appellee's position clear? Yes. Oh, hold on a minute. Let's see, appellee's... Is their position clear? Thank you. Okay, so I guess we get to start with Ms. Huebner, wouldn't we? Yes. Okay, and you're here to argue again, so maybe they should go first. Well, I... All right, thanks. All right, Mr. Grumad. Thank you, Your Honor. It pleases the Court, Counsel, my name is Jason Grumad. I am here on behalf of the Gerald Rosentreter Trust, a defendant in this case. We're here on the plaintiff's petition for rehearing. The plaintiff's first argument that the entire appeal is moot because there are no surplus proceeds to be paid to the defendant on Count 4 based on the trial court's apportionment of the sale proceeds completely ignores the obvious fact that the Gerald Rosentreter Trust appealed not only Count 4, but also the apportionment of the sale proceeds. If the court were to enter judgment in favor of the defendant on Count 4 and were to apply the sale proceeds as I am requesting, then the plaintiff would have to pay more than a million dollars to my client. The appeal is obviously not moot. The plaintiff's argument does not make any sense. It ignores the obvious fact that the defendant has appealed the apportionment of the sale proceeds. This argument also constitutes improper re-argument of the case and petition for rehearing because the plaintiff made the same argument in its brief. So the plaintiff's first argument is completely frivolous. The plaintiff's second argument is also completely frivolous. The plaintiff argues that the Gerald Rosentreter Trust waived its right to appeal Count 4 because the Gerald Rosentreter Trust did not also appeal all of the foreclosure sales in this case. The plaintiff cites to a case EMC Mortgage v. Kemp, which states that a judgment for foreclosure of a mortgage is not final and appealable until after the order is entered confirming the sale. That is correct, and that does not mean that the Gerald Rosentreter Trust has to appeal the sale in order to appeal the judgment. The judgment of foreclosure in a foreclosure case is only final and appealable after the order confirming the sale because only then are all of the issues disposed of between the parties. So you can't appeal a foreclosure case after the judgment, but before the sale, in order confirming the sale, you have to wait until after the sale and after the order confirming the sale to appeal anything in a foreclosure case. That does not say what the plaintiff is arguing, which is that a defendant has to appeal the sale in order to appeal anything in the foreclosure case. The case cited by the plaintiff just does not support the plaintiff's argument. The plaintiff also raises this argument, which is a waiver argument, for the first time in its petition for rehearing, which means that the plaintiff's argument is waived. You can't complain about waiver when you yourself have waived the argument. I find these waiver arguments, they make three different waiver arguments in its petition for rehearing, all of them are waived. So they're complaining about waiver when they've waived all their own waiver arguments. The third argument, the plaintiff is now requesting the court to decide the issue of apportionment before the case is remanded back to the trial court. As the appellate court still has not ruled on count four and is remanding the case back to the trial court to rule on count four, the issue of apportionment is still moved. You don't reach that issue. If you decide in favor of the bank on count four, because of the numbers on the amount owed on the mortgage and the amount of the sale, the apportionment doesn't matter because there would be no money to be applied. But if you decide in favor of the Gerald Rosen Cutter Trust on count four, which by your last opinion you are remanding, the issue of apportionment is moved, and only after you determine the issue of count four should you determine the issue of apportionment. So Justice Appleton's opinion that the issue of apportionment is not reached because you are remanding the case on count four is the correct decision. Because of the court's decision on count four, again, the issue of apportionment and the issue of the receivership, which we haven't even gotten into in this case, was deemed moot by the trial court judge. So the Gerald Rosen Cutter Trust was not allowed to conduct discovery or to have full rights to due process in the trial court on the whole second half of this case. So the Gerald Rosen Cutter Trust would very much like the case to be remanded on count four so that after the decision on count four is reached, and I am confident the decision on count four will be in the Gerald Rosen Cutter Trust's favor, so that the Gerald Rosen Cutter Trust could have full due process for the second half of the case, which it was denied in the trial court in the first place because the trial court had ruled all of that moot. Did Mr. Akers attempt to conduct an evaluation of the grain elevator facility? Did he? Yes. Did he attempt? He? Yeah. And is my understanding correct that the receiver, Timothy McHenry, refused to allow him to get on the property? He refused to allow him to get on the property when he identified himself as the expert appraiser for the Gerald Rosen Cutter Trust and also refused to provide him with income information for the grain elevator facility, which was required. And on whose authority did Mr. McHenry take those actions? The receiver is the plaintiff's agent. So this bad faith refusal to allow the defendant on the property and the refusal to provide the income information to the defendant in order to conduct the appraisal is imputed to the plaintiff. Was this matter called to the attention of the trial court? Yes. It is all set forth in the transcript of the final hearing. What did the trial court say about it? Nothing. What was the plaintiff's explanation about this? Nothing. They just attacked the appraisal for failing to use the income approach. My response was, my expert has testified that he requested the income information and he testified that he required... I'll ask Mr. Heathner when he's addressing us. Go ahead. Thank you, Your Honor. So the plaintiff is requesting the court to decide the issue of apportionment before the case is remanded. I would like the case remanded so that after the decision is reached, which I am confident will be decided in favor of the Joe Grossen Trader Trust, I can have full due process on the whole second half of the case, which I was denied in the first place. So if you decide the issue of apportionment, I will have been denied due process on the whole second half of this case because the judge first decided that count 4, entered count 4 in favor of the defendant, making all the other issues move. The fourth argument is really three different arguments. The fourth argument, the plaintiff now requests for the first time for the appellate court to issue specific directions on remand to allow the plaintiff the opportunity to present new evidence on the issue of fair market value relating to Track 1 and Track 7. The plaintiff failed to raise this issue in its initial brief, so again this issue is waived on rehearing. In my initial brief, I requested specific instructions on remand. I had a whole section entitled Specific Instructions on Remand, and the court completely ignored all my requests. That's fine, but I went to the trouble of actually asking for all of that in my initial brief. The plaintiff didn't bother to set forth any requests for specific directions on remand. In their initial brief, I don't think I should be here on rehearing to respond to these arguments now because they didn't set them forth in their initial brief. In any event, I would be happy if the appellate court remands the case back to the trial court to decide Count 4, and to decide issues of apportionment and receivership. And I would not object to the plaintiff having the right to introduce new evidence relating to fair market value. I'm confused by that since the entire time the plaintiff has been arguing that the sale price at the foreclosure sale establishes fair market value. Of course that's a false argument because it's a forced sale. By definition, fair market value can only be established when you have a willing seller and a willing buyer. If it's a forced sale, that cannot by definition establish fair market value. That's been their argument the entire time. If they now want to argue we want to introduce our own expert witness and have our own appraisal on fair market value, that's fine. I challenge them to find an appraiser who says Track 7 is worth $9 million and Track 1 is worth $150,000. I challenge them to do that, so I welcome that. I would just also ask the court to specifically allow the Gerald Rosentreter Trust to have the ability to conduct discovery and to have full evidentiary hearings on the whole second half of the case, which it was denied in the trial court. The plaintiff next argues that the Gerald Rosentreter Trust agreed to the procedure for apportionment in this case. That is false. There is nothing in the record to support that, and the plaintiff even states that and is briefed that there is nothing in the record to support that. Mr. Grimrod, I thought you guys called Mark Akers in the trial court to testify to the values. We did. Why do you say you were denied that? I was on a short leash. I was allowed to call my expert. I was cut off. I was not allowed to call the receiver at all to question the receiver about his report, which commingled all of the income from the different properties, which were subject to different mortgages. If they want new evidence, then I want to be able to depose their expert witness and have a fair, full evidentiary hearing on the fair market value. They had the opportunity, if they chose to, to put on evidence at that hearing where you put your expert on, couldn't they have? They did, yes. But they did not offer any expert testimony on fair market value. They did not. And they had advance notice because I mailed them my response to their motion for apportionment two weeks in advance of the hearing. I had my two 50-page appraisals attached to that motion as exhibits. So they had full notice that I was going to have an expert witness there, that I was going to have evidence on fair market value. And their position in the lower court was that the sale set the fair market value. And that has been their position in the appellate court. Okay. So again, they're arguing that the trust agrees to the procedure for apportionment. In this case, that is false. There is nothing in the record to support that. And they even say in their brief that there is nothing in the record to support that. Plaintiffs can't just make up evidence. This argument has no basis. Prior to the final hearing, the trial court never issued any order setting forth the specific procedure for apportionment. What the trial court did was announce, at the request of the plaintiff, that he was ordering the sale of tract one and tract seven separately, and then the sale of tract one and seven together, with the effective sale to be the sale resulting in the highest sale price. He didn't say anything about the apportionment. So at the final hearing, when the plaintiff filed his motion for apportionment, I objected. I filed a written response objecting. And at the final hearing, I objected to the proposed apportionment and the apportionment that was entered by the trial court. So the Gerald Rosen Trader Trust has not waived anything related to this issue. Once again, the plaintiff is making a waiver argument for the first time in a petition for rehearing. So again, they have waived their own waiver argument. They're trying to assert waiver against the Gerald Rosen Trader Trust. They're asserting it for the first time in a petition for rehearing. It's waived under Rule 367. So these are just plain bad faith arguments. Regardless, the problem is not really the method for apportionment on its face. It's the bad faith sale prices, which the plaintiff bid at the foreclosure sale, and the resulting application of the method of apportionment based on these facts. Any order by the court authorizing any procedure for apportionment does not shield the plaintiff from objections by the defendant when the plaintiff makes bad faith bids at the foreclosure sale. They bid 2% of fair market value on tract one, which is the tract owned by the Gerald Rosen Trader Trust. They bid 307% of fair market value on tract seven, the other tract, which was between the two tracts. The sale proceeds are to be apportioned between those two tracts. So why would they bid 300% and pay overbid by $6 million on tract seven? That's clear evidence of fraud to manipulate the apportionment of the proceeds in this case. There were no other bids by third parties at all on tract seven. The auctioneer announced, okay, we're selling tract seven, and the plaintiff bid $8,850,000. My expert testified the value of tract seven is $2.875 million. So they overbid by $6 million. The intention of the, the assumed intention of the procedure to apportion the proceeds based on the sale price, the foreclosure sale prices, is that those prices reflect the actual values of the properties. But in this case, they don't at all because tract one was sold for 2% of fair market value, and tract seven was sold for 300% of fair market value. So those are bad faith bids by the plaintiff, and they distort the representation of the actual value so they should not be used as the basis for apportionment. If tract one actually sold for anything close to fair market value, I would not be here appealing the method of apportionment. If tract one sold for close to fair market value, and if tract seven sold for close to fair market value, I wouldn't be here arguing to you. It's because they bid 2% on tract one, which is owned by my client, and bid 300% on tract seven. It should also be remembered, which I repeatedly set forth in my initial brief, they have no precedent. There's nothing in the Illinois mortgage foreclosure law, there's no case law setting forth a procedure for apportionment where you have two separate properties sold together, but where the two different properties are subject to two different mortgages, so the court has to apportion the proceeds. There's nothing, and they have cited nothing. It's a legal issue, so it's de novo review. There is no good reason for you to defer in any way to that method of apportionment. When the plaintiff is engaging in bad faith bids at the foreclosure sale and manipulating the apportionment of proceeds, that's another reason why you should not follow that method of apportionment. Because of that, the only fair way to apportion the proceeds, to actually have the proceeds apportioned based on actual values of the tracts, is to base it on the ratios of the fair market values, which is what I am proposing. Finally, the plaintiff argues that the General Gross and Trader Trust waived its right to appeal the apportionment because it did not also appeal the foreclosure sale. Again, the plaintiff has no support for this argument, so the argument is forfeited. The plaintiff cites to the case of Wells Fargo v. McCluskey, but that case does not support the plaintiff's argument at all. If you read that case, McCluskey relates to whether a defendant in a foreclosure case may file a motion to vacate a default judgment in a foreclosure case based on Section 213.01 of the Code of Civil Procedure. Those facts have nothing to do with this case. The General Gross and Trader Trust is not trying to vacate a default judgment, and they didn't file any motion under 1301. So that case has absolutely no bearing on this case. The plaintiff also made this same argument in its initial brief, but in its initial brief it did not cite to any authority, to any case law. So the argument was forfeited in their brief. Because the argument was forfeited in their brief, it was not properly raised in their brief, and therefore it is waived on the petition for rehearing. So again, they're asserting a waiver argument, but their waiver argument has been waived. They didn't properly raise this issue in their initial brief, so it's waived on rehearing. And the McCluskey case does not in any way say that the defendant in a foreclosure sale cannot file an appeal in the foreclosure case without specifically appealing the sale. That case just doesn't say that at all. It doesn't support their argument at all. The facts of this case are obviously unique. I have found no case law on point where there were two properties sold together, subject to two different mortgages, and the court then afterwards had to apportion the proceeds. There is nothing on point at all. The plaintiff is trying to make arguments based on cases that have no relevance to this case. All their arguments are false. The plaintiff itself has waived all of their waiver arguments, so I find those arguments to be particularly objectionable. So since there is no statute, there's nothing in the Illinois Mortgage Foreclosure Law, and since there is no case law on point, which says that the defendant has to appeal the combined sale of two tracts in order to appeal the apportionment, the defendant did not appeal the sale, the combined sale of the two tracts, because the defendant wanted to keep the admission by the plaintiff that the value of Tract 1 and Tract 7 together are more than $9 million. Again, the defendant's expert testified that Tract 7 is only worth $2.875 million. So the overall question here is whether the plaintiff should be allowed to purchase Tract 1 for $150,000, which is 2% of its fair market value of $5.6 million. I have cited two Illinois Supreme Court cases where the court decided that a foreclosure sale of over 6.0% of fair market value constituted grossly inadequate value such that the sale was unconscionable and could not be confirmed. The court in that case ordered a resale of the property. I cited a First District case that found that a sale for 34% of fair market value constituted grossly inadequate value such that the sale could not be confirmed, and I cited a Second District case that found a sale for 10% of fair market value constituted grossly inadequate value such that the sale could not be confirmed. If a sale for 2% clearly cannot be confirmed, then it should not be also used as the basis for apportionment of the sale proceeds in this case. That is the real issue that we are talking about. In my view, the proceeds are already there to be fairly apportioned to Track 1 because the plaintiff fraudulently bid 307% on Track 7, so the plaintiff overbid on Track 7 by $6,000,000. They bid $8,850,000 for a track worth $2,875,000. So they overbid by $6,000,000. The Gerald Rosen Trader Trust is asserting that Track 1 is only worth $5,600,000. So the additional $6,000,000 of proceeds are there to be fairly apportioned to Track 1. That would not unfairly take proceeds away from Track 7 because the bid by the plaintiff was fraudulent. Track 7 is only worth $2,875,000. The total proceeds are $9,100,000. So if you apply $5,600,000, in no way are you taking proceeds away from Track 7. Now, if you think Track 1 needs to be resold in order to apportion the proceeds to Track 1, then you should order Track 1 to be resold. You have current jurisdiction over this case and under Rule 366. I see that I've run out of time. All right, you'll have more time on recall. Thank you, Your Honor. Mr. Huebner? May it please the Court. Counsel? The appellant's argument ignores both the Illinois Mortgage Foreclosure Law and all the case law that has been decided based upon this. First, as to the mootness, I don't think that the defendant clearly understands what mootness is. Summary judgment was entered by consent of all parties, including this defendant, on three mortgages on Tracks 1 through 6. There was a fourth mortgage that summary judgment was also granted on, and this Court has vacated that fourth mortgage. But there was no appeal on the first three mortgages. What was owed on those first three mortgages was over $5,000,000. Tracks 1 through 6, the proceeds of the sale were $2.3 million. So, as it stands, there's a deficiency on those first three mortgages of over $2,700,000. I said, as it stands. That is based upon the trial court's apportionment of the sale proceeds between Tracks 1 and 7. Therefore, if this Court lets that apportionment stand, the appeal is moot because the first three mortgages that everybody agreed existed didn't get paid. The defendant has to basically convince you to throw out the sale results and go with what he wrongly urges is fair market value of Tracks 1. Well... But aren't they saying the $9.3 million bid for the combination of Tracks 1 and 7 was a fair price? They're not arguing to throw that out. They're just arguing that the apportionment... The apportionment was the total $9.1 million. They're saying we're fine with that. But here's the problem. He stands up here and says, my appraisal is fair market value. My appraisal is fair market value. This Court must go with fair market value. Guess what? An appraisal is not fair market value. There's no case in Illinois or any other state that says an appraisal is fair market value. Black's Law Dictionary says an appraisal is a valuation or an estimation of the value of property. It's not fair market value. Fair market value, as defined by Black's Law Dictionary, is the price at which a willing seller and a willing buyer will trade. The case law in Illinois all agrees with that. The Hewitt... Do we have a willing buyer and a willing seller in this case? Absolutely, Judge. I thought this was a forced sale. No. A foreclosure sale... A forced sale is, I can't pay my mortgage, I've got to sell the property. I'm going to have to file bankruptcy if I don't sell my property. A foreclosure sale is not a forced sale. They've argued that it's a forced sale. It's not. It's pursuant to a judgment of foreclosure and sale. It is sold pursuant to that judgment. Do the defendants want to sell it? No, they don't. Are they the seller? No, sir. They are not the seller. The seller is the court-appointed selling officer, who in this case was an auctioneer. The court required an auctioneer, not the sheriff's office, to get a better price. That seller is ready, willing, and able to sell. Who is the seller? In this case, Bruce Huber. He is a licensed auctioneer in the state of Illinois, pursuant to the judgment of foreclosure and sale. What happened, by the way, as I asked the defense counsel when I asked you, when Mr. Akers went to conduct his inspection? What was that all about? I did not know about that until we got the motion after the sale was over. I talked with the receiver. The receiver said he was contacted by somebody that said they wanted to go on to the property, and the receiver said no. Counsel, again, wrong again under the foreclosure law. The receiver is an agent of the plaintiff. Incorrect. The receiver is an officer of the court, appointed by the court. The receiver's conduct is not imputed to the plaintiff, nor is it imputed to the defendant. The receiver works for the trial judge. Had I known this, going on to the property isn't going to tell him how much the income of the property is, but in any event, it wasn't called to the attention of the trial court until after this hearing. So bottom line, fair market value, the Hewitt versus Hurwitz case. The fair market value of property is the amount of money that a purchaser, willing but not obligated to buy the property, would pay an owner, willing but not obligated to sell the property, without taking into account the values or necessities peculiar to either party. In this case, we came to fair market value. How did we do that? We had a willing seller, an auctioneer who was getting paid a commission. We advertised extensively, as you saw in the report of sale, the required advertising once a week for three weeks in a Macoupin County paper. We advertised in Sangamon County, Madison County, all over the states, Central Illinois. We put it on websites. We did everything that we could to get bidders there, and we got 41 registered bidders there. The farmland, which was sold separately, it brought over $13,000 an acre. That was, at that time, I think was the highest that farmland had brought. There were at least two bidders there that registered and were going to bid on the elevator operation. One of them was M&M Services, who leased it from the receiver during the term of the receivership. We had bidders there to bid. Justice Harris, in the last hearing, he said in counsel's rebuttal, well, why did it bring $150,000? I didn't get a chance to answer that question. I can answer that question. It brought $150,000, that tract, because it has little or no value without Tract 7. Tract 7 is the elevator operation. It has the grain pits where the trucks drive in with the grain and drop it in the grain pits. It has the elevator system that takes that grain and lifts it up and puts it in various grain pits. It has the weigh scales where the trucks come in and get weighed. When they're full of grain, then they drop the grain in the grain pits, then they weigh again. That's how the elevator operation knows how much the grain weighed and how much to pay them. That is the elevator operation. This Tract 1 has 5 1⁄2 grain bins, which are split by the property line. One of them is split by the property line. That's why I say 5 1⁄2 grain bins. And it's not worth anything without Tract 7 because that's the elevator operation. I asked their appraiser, did you take into account that you can't get the grain in and out of these grain bins? Yeah, I did. I took that into account. Did you take into account one was split in two by the property line? Yeah, I took that into account. Did you take into account the Quonset Hut was split? Yeah, I did. But yet it still comes out 5.6 million. Further, if you own just Tract 1 and you own 5 1⁄2 grain bins, it's not worth as much as farmland. Part of it was farmland, but you've got grain bins on there. You can't operate it as an elevator operation. It would cost over $2 million to put in grain pits and waste scales and all the elevator operations and augers and everything. Counsel, have you raised new arguments in your petition for rehearing that were not present in your initial brief to this court? No, sir, I don't think so. You know, I want to go into these things, and basically the statute is there. Do you argue in your petition for rehearing that by consenting to a confirmation of the foreclosure sales, the defendants waived the right to appeal the summary judgment on count four? Yes, I did. Was that in your initial brief? We were looking for that. I do not recall, but that's based on the statute, Judge. I can't waive a statute. You can waive anything by not raising it in the brief to argue to this court. But we did argue that. Actually, waiver isn't the right term. You forfeit it if you don't raise it. So that was my question, because Supreme Court rules don't permit you to raise new matters in a petition for rehearing. I believe that we – I argued it at oral argument the last time. Was it brief? I can't answer that question now. Okay, go ahead. We're checking that. The bottom line, the bids are appropriate. Counsel saying fair market value is not the law in this case. To conclude this part of it, if you buy just that one tract and you want to sell those grain bins off of there so you can have farmland, it costs more to tear them down and move them than it does to buy new ones. So basically, $150,000 is the value of the property. And that's what all of the cases say, too. Again, from Hewitt v. Hurwitz, counsel says there's no case law that says that the price is fair. Well, Hewitt v. Hurwitz, citing two other cases, said generally the price paid for the property at a recent sale is the best evidence of value. There are many other cases in Illinois that says we're not going to disturb sale results. Maybe it doesn't get the highest price, but we're not going to disturb that. There is no case that has ever said we're going to substitute an appraisal for actual sale results. And we did everything we can. If you look at what was done to prepare for this sale, we did everything we could to get the highest and best price for both of these properties. Who wound up buying it? The elevator operation, the bank ended up buying it. Was it your client? Yes. We put in minimum bids on all the farmland and the elevator operation, hoping to get people to buy. And they went over on our farmland. We got more than we estimated. And on the elevator operation, it did not go over our minimum bid. We were hoping that it would because we'd rather take the cash. But the bottom line on this is the defendant says that there is no authority for holding a sale in the way that this sale was held. Again, ignoring the foreclosure law, 735 ILCS 515-1506, matters in a judgment. Without limiting the general authority and powers of the court, special matters may be included in the judgment of foreclosure if sought by a party in the complaint or by separate motion. Such matters may include without limitation 14, such other matters as approved by the court to ensure the sale of the real estate for the most commercially favorable price for the type of real estate involved. That's what we did. Counsel called me before a hearing that we had after the judgment was in. He said, how is 1 and 7 going to be sold? I said, I don't know. We'll ask the court. We go to court. I said, Judge, how is 1 and 7 to be sold? It splits the elevator operation in two. There are separate debts and separate owners. He said, this is not my first rodeo. I've done this before. You offer them separately, and then you offer them together, and however they bring the highest price, that's how they're sold. I said, Judge, if they sell together, how is the surplus going to be a portion between the two tracks because it's separate debts and separate owners? Judge Londrigan said, it will be on a pro rata basis. Counsel sat there, did not object. That's a term of the sale. That's a term of the sale, how the sale is going to be held. We then prepare a notice of sale, do all of our advertising. We send a copy of the notice of sale to counsel. It says how they're going to be sold. No written objection, no objection of any kind. The sale, it takes place, and counsel says in his brief, well, that seemed perfectly logical and reasonable to me. Because it is perfectly logical and reasonable, that's how it's done to get the highest price for the property at the sale. Then I file a motion for confirmation of sale with a report of sale that says the auctioneer offered them separately, then he offered them together. Here's how much they brought separately. Here's how they brought together. No objection. In fact, the defendant files a response to that and says, I have no objection as long as that's what the court says. I have no objection to confirmation of the sale. We go to the hearing and he consents to confirmation of the sale. Confirmation of the sale is the full amount for the two parcels together. It's a confirmation of everything that happened at the sale. It specifically says, in order of confirming the sale, approves the report of sale. The report of sale said, offered separately, these amounts offered together, this amount sold together because that was more. It's a confirmation of the whole thing. Again, the Illinois Mortgage Foreclosure Law applies to this. Counsel doesn't seem to think so, but it does. 515.1508, confirmation of sale. Unless the court finds that a notice required in accordance with subsection C was not given, the notice of the sale. Two, the terms of the sale were unconscionable. And three, the sale was conducted fraudulently or that justice was otherwise not done, the court shall enter an order confirming the sale. He consents to the order confirming the sale and then he says, now judge, I want to argue that the terms of the sale were unconscionable and that the sale was fraudulently conducted. He just consented and those are the basis for objection to confirmation of the sale. You can't stand there and say, okay, I agree that the sale was conducted fairly and that the terms of the sale were not unconscionable and there was no fraud. Wait a minute, now I want to argue that this was all fraudulent and the terms of the sale were unfair. That's why Judge Laundrie was taken aback. I don't think he's arguing that the terms of the sale were unfair. He's arguing that the apportionment of the proceeds between the tracts was unfair once the sale was confirmed. But, Justice Pope, that's the terms of the sale. Well, the terms of the sale were $9,100,000. No, that's what it sold for. The terms of the sale was it's going to be offered separately in two tracts. It's going to be offered together and however it brings the most is what it sells for and that it's going to be apportioned pro rata if there is a surplus. That's the terms of the sale. What does apportionment pro rata mean? The bid was $8,850,000 for the tract 7 that was the elevator operation. The high bid was $150,000 for the tract 1 that they're wanting to be raised and that makes $9,000,000. The total bid was $9,100,000. The surplus, the terms of the sale was the surplus would be prorated based upon the two sales prices and it was. And he's saying, well, 2%, 2%. Well, that was what the sales prices was. Judge Londrigan also said there's not a shred of evidence of fraud. There's absolutely no evidence of fraud. The bank's bids were based on consultation with experts in the field and what they said is you don't want to be stuck with just tract 1 because then you have no elevator operation. You have no way of getting the grain in and out. You have no elevator operation. You would have to spend over $2,000,000 to make it into an elevator operation and then you have an elevator operation that sits right next to another elevator operation which would be economically suicide because farmers bring their grain to the closest elevator. You'd be fighting. You'd be competing. So our bids were based upon rational bidding. As I said, there were two other bidders there that were grain companies. They didn't bid more than $150,000 for that tract because they didn't want to be stuck with just one tract and not the elevator operation which was the other tract. Further, to say the plaintiff has fraudulently bid, guess what? The plaintiff is under no obligation to bid a nickel at any foreclosure sale and that would not be fraudulent. If the plaintiff does not bid at a foreclosure sale, it could be that the sale is so low as to be unconscionable and the sale wouldn't be confirmed, but we don't have that in this situation. The sale was confirmed. The report of sale was approved and the sale was confirmed. If you ignore the Illinois Mortgage Foreclosure Law, he's got an okay argument, but this case is governed by the Illinois Mortgage Foreclosure Law. You can't go to court and say the terms of the sale were okay. The sale was not conducted fraudulently. I consent to confirmation of the sale and then two minutes later say, wait a minute, I want to argue that the terms were unconscionable and the sale was conducted fraudulently. And that's what counsel did. That's why Judge Londrigan was like, but wait, you consented to the confirmation of the sale. The sale's been confirmed. The terms were that it would be surplus, would be pro rata divided. You consented. By consenting, you said that the sale is fair, and now you want to argue that the sale is not fair. And that doesn't work under the foreclosure law. You have to appeal the order confirming the sale. That's the appealable order. And you can't consent to the entry of the confirmation of the sale and then turn around and say, well, but wait, I'm okay with the sale because that brought a good price and that reduces the deficiency to my clients, but I think I found a way that I can get money if I bring in an invalid appraisal that didn't use the income approach and say it's worth $5.6 million and convince the court that an appraisal is fair market value, then I can get $1.4 million back. In a case that the Rosencranter family owed $19 million and the bank recovered $14 million, and again, all of the cases say the opposite of what he is arguing. And he says there's no case law. I cited the Hurwitz case. It says that's the fair value. In our brief, we cited NAB Bank versus LaSalle Bank. In that case, when there is no fraud or other irregularity in the foreclosure proceeding, however, the price at which the property is sold is the conclusive measure of its value. Again, it was sold for these prices. That's the conclusive measure of its value, and it really is. I urge the court, it really is. Finally, my last point, my light went off. Mr. Rosencranter was there and a registered bidder. He has an appraisal that says that tract is worth $5.6 million. He is silent when it goes for $150,000. If he believed it was worth that, why didn't he bid? Why didn't he bid that tract up if he believed it was worth it? There's a case on point, U.S. v. Buckman that I cited in my brief. The district judge thought competition superior to appraisals as a means of establishing market value. An auction yields a real price while appraisals are just forecasts. Appraisals often produce estimates that favor their employer's interest. This is a bought and paid for appraisal. I have to cut you off because I cut Mr. Krumrad off. Thank you. Thank you. Mr. Krumrad, any rebuttal? Yes, Your Honor. I would urge you to please read my briefs again before you decide this case because everything he's saying is just wrong. With all due respect, everything he's saying is wrong. He was here last time and said, you know, Mr. Krumrad's young and he obviously doesn't know what fee simple means. He was arguing at the last hearing with all confidence in the world, fee simple means full title. Clearly it doesn't. Everything he was saying at the last hearing on fee simple was completely wrong. Everything he's saying right now is completely wrong. The Illinois mortgage foreclosure law, and I briefed this extensively in my initial brief, does not address at all the facts of this case where you have a trial court judge who sold two different properties subject to two different mortgages in a combined sale and where you have to have an apportionment of the proceeds afterwards. The Illinois mortgage foreclosure law does not talk about apportionment of proceeds anywhere because it does not think about a judge ordering a combined sale of two properties subject to two different mortgages. So the Illinois mortgage foreclosure law does not apply here to the specific facts of this case. So what he's arguing, oh, he consented to the sale so he can't object to the Illinois mortgage foreclosure law doesn't say that and there's no case law that says that. His arguments on the foreclosure sale establishing fair market value are clearly wrong. I assume you know that. The judge, again, did not say anything about the method for apportionment until the final hearing. So there was no waiver. The General Gross and Schroeder Trust did not agree to the procedure for apportionment. What about his argument that there were grain companies that could have bid and didn't? More than 170,000 I think was the figure. Was it offered for sale at auction? Yes. Did it sell for 2% of fair market value? Yes. And if it sells for 2% of fair market value, I've cited a few case laws saying 60% of fair market value has been ruled by the Illinois Supreme Court as So I'm arguing, yeah, we agreed to the combined sale for $9.1 million, but there's no way you could confirm a sale for 2% of fair market value. So how can you use that as the basis for the apportionment? It's completely unfair. That wasn't my question. He asserted that there were grain companies that could have bid on the tract for more than 170,000 and chose not to. I don't know whether there were grain companies. Are you arguing that that then reflects maybe it was an appropriate valuation? No, I'm not saying it's an appropriate valuation. That was his argument. I want your response to it. There's no evidence in the record that there were other grain elevators at the auction. He didn't bother to attempt to introduce any evidence to that in the record. There's no evidence of that in the record as to who was there. Well, that's why I'm asking you the question. You heard him make that assertion, and you're now telling me there's nothing in the record to support it. Right. Even if they were there, it still was a sale for 2% of fair market value. In a normal case where you have a sale that has to go through a confirmation process, I would urge you, there's no way you should confirm a sale for 2% of fair market value. It's unconscionable. What about his argument that you approve the terms of sale, which would be offering it first and then offering it combined and agreeing to a pro rata distribution based on what it brought when offered separately? I did not in any way agree to a pro rata distribution of the sale proceeds because I objected to his separate motion for apportionment. He filed a motion for confirmation of the combined sale. Then he filed a separate motion for apportionment of the sale proceeds between Tracts 1 and 7. I objected to the motion for apportionment of the sale proceeds. But he's claiming here that the terms of sale provided for that. Again, the Illinois Mortgage Foreclosure Law doesn't contemplate selling two tracts together, which are subject to two separate mortgages, where you have to apportion the sale proceeds. So the Illinois Mortgage Foreclosure Law doesn't address this issue. It just doesn't. He hasn't cited any case law in support of his arguments. He's also making the false argument, well, if you didn't like the sale price, you should have bid yourself. Well, my clients had just all filed bankruptcy, so they didn't have hundreds of thousands of dollars ready to use to purchase the tracts. I mean, that's just a false gotcha argument is what that is. Because as soon as a defendant runs out of money, even if that's not the fair market value, then the argument is, oh, you stopped bidding at $300,000, so $300,000 must be the fair market value. That's just a gotcha argument that some court came up with because they didn't like the defendant in that case, I would assume, because it makes no sense. I see that I'm out of time. Thank you, Mr. Verma. We'll take this matter under advisement and stand in recess.